RIVERVIEW STATE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11180. Promulgated July 10, 1928.

*H. L. Washington, Esq.*, for the petitioner.
*O. Bennett, Esq.*, for the respondent.

OPINION.

LITTLETON: The Commissioner determined deficiencies in income and profits tax of $2,925.91 for the year 1919, $8,765.30 for 1920, and $1,910.20 for 1921.

The only errors urged by the petitioner at the hearing are (1) that the Commissioner erred in refusing to allow deductions for losses of $9,135 for 1920 and $2,940 for 1921 alleged to have been sustained on the sale of certain securities, and (2) that the Commissioner erred in including in income for 1921 the amount of $1,365 as interest received.

The Commissioner did not in the deficiency notice mailed to the petitioner assert any penalty for any year, but at the hearing he amended his answer and alleged that the deficiencies for 1920 and 1921 were due in part to evasion and that the 50 per cent penalty provided in the Revenue Acts of 1918 and 1921 should be imposed.

Under the first issue petitioner claims that it sustained the losses mentioned upon the sale of certain industrial bonds and certain securities as a result of a ruling by the Banking Department of the State of Kansas; that these securities could not be carried by the bank as legal assets. The Commissioner's position is that the sale was not *bona fide;* that after the purported sale the petitioner remained the real owner of the bonds and, therefore, the interest accrued upon such bonds in the year 1921 was income to petitioner.

Petitioner is a Kansas corporation engaged in the general banking business at Kansas City. January 10, 1920, petitioner purchased certain bonds of the Atlantic Fruit Co. at a cost of $19,300. Petitioner also owned certain bonds of the Ruping Leather Co. and the A. O. Smith Corporation. In July, 1920, the Banking Department of the State of Kansas made an investigation of the affairs of the petitioner to the close of business June 30, 1920, and notified petitioner in writ-

ing that these bonds were not legal assets and ordered the bank to dispose of them. Petitioner ascertained the market price of the bonds and on July 21, 1920, sold the Atlantic Fruit Co. bonds to one Dwight Coburn, an employee of the bank, for $10,165, their then market price. Coburn gave the bank his promissory note for the bonds and placed the bonds with the note as security. The bank charged off a loss of $9,135 on this sale. March 21, 1921, petitioner sold the bonds of the Ruping Leather Co. and the A. O. Smith Corporation to C. W. Keith, an employee of the bank, at the then market price of such bonds at a loss of $2,940. Keith gave petitioner his demand promissory note for the purchase price and placed the bonds with his note as security. Coburn was bookkeeper and teller, and filled various other positions in the bank as occasion required. Keith occupied the position of teller. When the State Banking Department ordered the bank to dispose of these bonds, the cashier, who was also a director, discussed with Coburn and Keith the matter of their purchasing the bonds, giving their note therefor, placing the bonds with the note as collateral, and having the interest upon the bonds, together with any amount that might be derived from a subsequent sale thereof, applied on the purchase price by said Coburn and Keith. Coburn and Keith were willing to purchase the bonds and pay for them in this manner but they wanted to be protected against any possible loss in the matter. The cashier discussed the matter of selling the bonds to Coburn and Keith with certain individuals who were also directors of the bank, and these individuals, including the cashier, agreed with Coburn and Keith to protect them against any loss they might sustain upon a future disposition of the bonds in question. This arrangement was made by the individuals constituting the directors of the bank in their personal rather than in their official capacities. The bank was in no wise a party to the arrangement between the individuals constituting its directors and Coburn and Keith, and there was no understanding between the bank and Coburn and Keith that if any surplus should be derived from the disposition by them of the bonds it should belong to the bank. At the time of the sale, however, it was understood by the bank, Coburn and Keith, and the directors who had agreed individually to protect the purchasers of the bonds from the bank against loss, that if the bonds sold to Coburn were disposed of for an amount in excess of his note, the surplus would be applied upon the note of Keith if it should not be fully satisfied, out of the bonds purchased by him, and, similarly, if the bonds sold to Keith were disposed of for an amount in excess of his note, the surplus would be applied on Coburn's note if it should not be fully satisfied from proceeds of bonds purchased by him. Coburn left the bank before his note had been paid and Keith took

over the bonds purchased by Coburn and gave the bank his note therefor. Thereafter the proceeds from the bonds were credited to Keith's notes to the bank.

The petitioner deducted from gross income in its return for 1920 the amount of $9,135 as a loss on the sale of bonds of the Atlantic Fruit Co. to Dwight Coburn in July, 1920, and in its return for 1921 deducted the amount of $2,940 as a loss on the sale of bonds of the Ruping Leather Co. and the A. O. Smith Corporation to C. W. Keith in March, 1921. The Commissioner disallowed these deductions and also increased income in the amount of $1,365, representing the interest accrued in 1921 on the bonds sold to Coburn in 1920 and to Keith in 1921.

There is no dispute between the parties as to the amount of the losses, if any were sustained, or as to the amount of interest accruing on the bonds in question in the year 1921. In the opinion of the Board the Commissioner erred in disallowing the losses claimed and increasing the petitioner's income in the amount representing the interest accrued upon the bonds in question. The greater weight of evidence before the Board is to the effect that so far as the bank was concerned, the sale of the bonds of Coburn and Keith was a completed and closed transaction made in absolute good faith at the then market price of the bonds. The bonds were actually delivered to the purchasers. They gave petitioner their notes for the bonds with the bonds as collateral and agreed to apply the interest and any proceeds which might be derived from the sale of the bonds to the satisfaction of their notes and the bank had the additional guarantee by certain other individuals that the notes of Coburn and Keith would be paid if the interest and proceeds derived from the sale of the bonds should not be sufficient for this purpose. The fact that the purchasers were employees of petitioner; that the bonds were placed as collateral security for their notes; that the interest on the bonds and any proceeds derived from the sale thereof were to be applied to the satisfaction of the notes; and that certain individuals who were directors of petitioner agreed in their individual capacities to guarantee the full payment to the bank of the notes of Coburn and Keith, does not establish that the sale was not a *bona fide* one. On the contrary we think the evidence establishes that the bank parted absolutely with all right, title, and interest in the bonds and that all it could ever claim in respect thereof was the price at which it sold them to Coburn and Keith. The petitioner was to receive only the amount for which it sold the bonds to Coburn and Keith. There is some evidence in the record to the effect that under the arrangement between Coburn and Keith, and the individuals who agreed to protect them against any loss, any profit that should result from the sale of the bonds would accrue to the latter. The Commissioner disal-

lowed these deductions and increased income by the amount of the interest accrued on the bonds upon the ground that the transfer of the bonds to Coburn and Keith was never intended by the parties to the transaction to be a sale, that it was merely a scheme to evade the ruling of the Banking Department of the State of Kansas, and when the petitioner deducted the losses from gross income for 1920 and 1921 and failed to include in income the interest accrued upon the bonds in 1921 it did so with willful intent to defeat and evade the tax upon its income for these years. The evidence satisfactorily establishes that this was not the case. The petitioner sustained the losses claimed and the interest of $1,365 was not income to it for 1921.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*